SEND

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 10-5790 PA (SHx) | | Date | June 13, 2011 |
|---|---|---|---|---|
| Title | AWR Corp. v. ZTE, Corp., et al. | | | |

| Present: The Honorable | PERCY ANDERSON, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Paul Songco | Not Reported | N/A |
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:** IN CHAMBERS

     Before the Court is plaintiff AWR Corporation's ("Plaintiff") Motion for Partial Summary Judgment. (Docket No. 38.) Defendant ZTE Corporation ("Defendant") has filed an Opposition.[1] Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds that this matter is appropriate for decision without oral argument. The hearing scheduled for June 13, 2011 is vacated, and the matter taken off calendar.

I.     Factual Background

     Plaintiff designs and distributes high-frequency electronic design automation software which is used to design a variety of electronic-based products such as wireless telecommunications equipment.[2] Plaintiff offers a package of its software products for download on a free trial basis. Plaintiff grants potential customers a license which entitles the user to a 30-day free evaluation period.

---

[1]     The Opposition is also filed by defendant ZTE USA, Inc.; however, Plaintiff's Reply explains that this Motion is being made as to ZTE Corporation only.

[2]     The facts in this section concerning Plaintiff's software and how it operates are drawn from the declaration of Theodore Miracco, the founder and Executive Vice President of Worldwide Sales & Marketing for Plaintiff. Defendant objects to Miracco's declaration, claiming that he does not hold a position which would give him sufficient personal knowledge or foundation to testify about the technical aspects of how the software operates. Any such deficiencies in Miracco's original declaration are cured by his supplemental declaration filed with Plaintiff's Reply. Miracco lists his extensive education and work experience in the field of electronic design, and explains that his normal job duties include using the technical components of the software registration system and generating, analyzing, and interpreting reports containing "phone home" information. (Miracco Supp. Decl. ¶¶ 24-27.) Miracco also explains that he has personally installed every version of the software and thus has personal knowledge of what steps a user must take to install the software. (Id. ¶ 32.) In light of Miracco's supplemental declaration Defendant's objection is overruled.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-5790 PA (SHx) | | Date | June 13, 2011 |
|---|---|---|---|---|
| Title | AWR Corp. v. ZTE, Corp., et al. | | | |

     When a user installs any version of Plaintiff's software for the first time the user is presented with a "Software License Agreement" ("SLA") that can be accepted by clicking "I Agree."[3] The software will not install unless the user clicks "I Agree." To access the software the user must enter a key code provided by Plaintiff. The software will not accept an unauthorized or "cracked" key code unless its protection technology has been weakened or removed. The SLA states:

> Customer shall not . . . use any key codes other than key codes provided directly by [Plaintiff] for use of the Software or take any action to circumvent the key codes or any such alternative licensing protection mechanism, and any such action by Customer or any employee of Customer shall constitute a material breach of this Agreement.

(Miracco Decl., Ex. 7, ¶ 2.e.) The SLA also states that "[i]n the case of an evaluation license, the license will terminate upon the expiration of the applicable evaluation period or the expiration of the key code." (Id., ¶ 10.a.) Finally, the SLA states that "[w]ithin 5 days after termination or expiration of this Agreement, Customer will return or destroy, at Customer's expense, the Software, Documentation, license key codes and all copies thereof . . . ." (Id., ¶ 10.c.)

     Plaintiff's software includes a "phone home" feature, whereby the software communicates with Plaintiff's servers over the internet to check for software updates. When the software "phones home" it reports its version, its serial number, which is the key code used to access the software, as well as the MAC address[4] and IP address of the computer running the software.

     Defendant has never purchased a license from Plaintiff for commercial use of the software, although it admits that several of its employees have downloaded the software for evaluation purposes. Plaintiff now moves for partial summary judgment on its claim for breach of contract, claiming that Defendant breached the terms of the SLA by using unauthorized "cracked" key codes to access its software and by failing to destroy or return the software after expiration of the evaluation period.

II.    <u>Legal Standard</u>

---

[3]/    Defendant disputes this fact, noting that at least one version of Plaintiff's software presents the user with a document entitled "End User License Agreement" ("EULA"). Since the EULA contains essentially the same terms that are at issue in the SLA, the fact that one of Defendant's employees might have accepted the EULA instead of the SLA does not prevent the Court from granting summary judgment. <u>Compare</u> (Kopelev Decl., Ex. 7, ¶¶ 2.f., 10.a.-c.) <u>with</u> (Miracco Decl., Ex. 7, ¶¶ 2.e., 10.a.-c.).

[4]/    "MAC" stands for "Media Access Control." A MAC address is "a unique serial number for computer hardware, such as a network card, that interfaces with the internet that is used to identify computers on a network." (Groat Decl. ¶ 4.)

**SEND**

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-5790 PA (SHx) | Date | June 13, 2011 |
|---|---|---|---|
| Title | AWR Corp. v. ZTE, Corp., et al. | | |

      Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S. Ct. 2505, 2514, 91 L. Ed. 2d 202 (1986). If the moving party would have the burden of proof at trial, "it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." C.A.R. Transp. Brokerage Co., Inc. v. Darden Restaurants, Inc., 213 F.3d 474, 480 (9th Cir. 2000)(quoting Houghton v. South, 965 F.2d 1532, 1536 (9th Cir. 1992)). In order to defeat summary judgment the opposing party must then "present significant probative evidence tending to support its claim or defense." Id. (quoting Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991)).

      The nonmoving party's allegation that factual disputes persist between the parties will not automatically defeat an otherwise properly supported motion for summary judgment. See Fed. R. Civ. P. 56(e) (nonmoving party "may not rest upon the mere allegations or denials of the adverse party's pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial"). A "mere 'scintilla' of evidence will be insufficient to defeat a properly supported motion for summary judgment . . . ." Fazio v. City & County of San Francisco, 125 F.3d 1328, 1331 (9th Cir. 1997). "On summary judgment, the proper task is not to weigh conflicting evidence, but rather to ask whether the non-moving party has produced sufficient evidence to permit the fact finder to hold in his favor." Ingram v. Martin Marietta Long Term Disability Income Plan for Salaried Employees of Transferred GE Operations, 244 F.3d 1109, 1114 (9th Cir. 2001). If the adverse party does not so respond, summary judgment shall be entered.

III.    Analysis

      To establish a cause of action for breach of contract Plaintiff must show "(1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." Durell v. Sharp Healthcare, 183 Cal. App. 4th 1350, 1367, 108 Cal. Rptr. 3d 682, 697 (2010). At this time Plaintiff is moving for partial judgment as to Defendant's liability only, and not damages. Defendant disputes that Plaintiff has demonstrated the existence of a contract or a breach of that contract.

      A.    Existence of Contract

      Defendant presents several arguments as to why no contract exists between it and Plaintiff. First, Defendant claims that Plaintiff has produced no evidence of whether any of its employees actually clicked "I Accept" when presented with the SLA. However, since the software cannot be installed onto a computer without clicking "I Accept," and Defendant admits that some of its employees downloaded and used Plaintiff's software for evaluation purposes, those employees must have clicked on "I Accept." See BMMSOFT, Inc. v. White Oaks Tech., Inc., No. C-09-4562 MMC, 2010 WL 3340555 at *1 (N.D.

SEND

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-5790 PA (SHx) | Date | June 13, 2011 |
|---|---|---|---|
| Title | AWR Corp. v. ZTE, Corp., et al. | | |

Cal. Aug. 25, 2010)(allegation that software could not run unless someone clicks "I agree" combined with allegation that software was in use by the defendant created reasonable inference that the defendant had clicked "I agree").

      Second, Defendant claims that Plaintiff has not produced any evidence showing that its employees had authority to bind Defendant to the SLA. Under California Civil Code § 2316, "[a]ctual authority is such as a principal intentionally confers upon the agent, or intentionally, by want of ordinary care, allows the agent to believe himself to possess." Actual authority may be express or "implied or incidental to a grant of express authority." People v. C.S.A., 181 Cal. App. 4th 773, 781-82, 104 Cal. Rptr. 3d 832, 839 (2010). "An agent has implied authority to use any means that are incidental to and reasonably proper in the performance of an assigned task." Leno v. Young Men's Christian Ass'n, 17 Cal. App. 3d 651, 658, 95 Cal. Rptr. 96, 100 (1971); see also Restatement (Third) of Agency § 2.02(1)("An agent has actual authority to take . . . acts necessary or incidental to achieving the principal's objectives, as the agent reasonably understands the principal's manifestations and objectives when the agent determines how to act.").

      Defendant does not dispute that several of its employees downloaded Plaintiff's software onto Defendant's computers for evaluation purposes. Defendant also admits that its employees attended seminars held by Plaintiff or Plaintiff's partners where they were encouraged to try out the software. Defendant further explains that the reason it never purchased a license for commercial use of Plaintiff's software was because its employees found that it was limited in function compared to software that Defendant already licenses from other similar companies. These facts allow a reasonable inference that Defendant's employees were tasked with evaluating Plaintiff's software to see whether Defendant should consider purchasing a license for commercial use, and Defendant has not argued otherwise. In order to perform the task of evaluating Plaintiff's software, it is reasonably proper that Defendant's employees would accept the terms of the SLA, since that is incidental to the primary task. As such, the Court finds that Plaintiff has provided adequate evidence that Defendant's employees had implied actual authority to accept the terms of the SLA on Defendant's behalf.

      Finally, Defendant argues that the mutual assent necessary for contract formation is absent because Plaintiff never would have granted a license for use of its software if that software were accessed using an unauthorized "cracked" key code. Defendant appears to be arguing that by breaching the contract, Defendant invalidated Plaintiff's original agreement to make the contract. There is no authority for this position, and Defendant's argument does not disprove the existence of a contract.

      B.     <u>Defendant's Breach</u>

      Plaintiff claims that Defendant breached the terms of the SLA failing to destroy or return all copies of the software after expiration of the evaluation period and by using unauthorized key codes to

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 10-5790 PA (SHx) | Date | June 13, 2011 |
|---|---|---|---|
| Title | AWR Corp. v. ZTE, Corp., et al. | | |

access the software.[5] Plaintiff provides copies of usage reports reflecting data transmitted from Defendant's computer using the software's "phone home" feature.[6] Specifically, the usage reports reveal that a computer with MAC address 00042e0104ea "phoned home" to Plaintiff multiple times over December 2006 to May 2007 and then again from December 2010 to February 2011 through IP addresses that Defendant admits to using.[7] See (Groat Decl., Ex. 16.) The fact that the software continued to "phone home" from this computer over a period of more than 30 days demonstrates that Defendant did not destroy or return the software after expiration of the evaluation period. The usage

---

[5]/ Defendant's argument that there is no evidence that it actively used the software for commercial purposes is irrelevant, since Plaintiff does not claim that it breached the SLA in this manner.

[6]/ Defendant objects to these usage reports as well as the declaration of Plaintiff's Project Manager Lori Groat, who generated these reports. These objections are overruled. Defendant objects that Groat's declaration lacks personal knowledge or foundation since there is no indication that she has the technical knowledge or experience to understand how to retrieve, review, or interpret the reports. Any such deficiencies in Groat's original declaration are cured by her supplemental declaration filed with Plaintiff's Reply. Groat explains that she has background, training, and proficiency in dealing with Structured Query Language and relational database management systems, and that her main job duties include generating and analyzing usage reports in order to investigate suspected piracy. (Groat Supp. Decl. ¶ 8.)

Defendant objects to the usage report as hearsay. However, Plaintiff has sufficiently demonstrated that the reports fall under the business records exception in Federal Rule of Evidence 803(6). Groat explains that it is the regular practice of Plaintiff to record the "phone home" data, that the data was recorded in the regular course of Plaintiff's business activity, and that Plaintiff's servers record the data at or near the time the activity occurs. (Id. ¶ 7.) Defendant also objects that the usage report lacks foundation and is not authenticated. However, Groat explains that the "phone home" data can be retrieved unaltered from Plaintiff's servers at a later date and that she personally generated the usage reports by running a query using the MAC addresses and IP addresses that Defendant admitted to owning. See also Fed. R. Evid. 901(b)(9) (stating that a party may authenticate a piece of evidence through "[e]vidence describing a process or system used to produce a result and showing that the process or system produces an accurate result").

[7]/ Defendant points out that some of the entries from this computer are consistent with a user downloading new versions of the software for trial. The usage report shows that this computer "phoned home" numerous times between November 2006 to February 2011. This computer contained several different versions of the software during this period. The computer reported that version 3173 "phoned home" multiple times between December 2006 to May 2007 and version 4980 "phoned home" multiple times between December 2010 and February 2011. The other versions on this computer never "phoned home" over periods exceeding 30 days.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-5790 PA (SHx) | Date | June 13, 2011 |
|---|---|---|---|
| Title | AWR Corp. v. ZTE, Corp., et al. | | |

report also shows that during these periods the software was accessed using the key code "10179." Plaintiff's Project Manager, who frequently analyzes such usage reports to investigate suspected piracy, explains that 10179 is not a legitimate key code issued by Plaintiff. Thus the usage report demonstrates that Defendant breached the terms of the SLA by using an unauthorized key code to access the software.

    Defendant attempts to attack Plaintiff's evidence by arguing that the usage reports mostly contain entries from MAC addresses of computers that it has no record of owning. However, Defendant does not deny that it owns a computer bearing MAC address 00042e0104ea. In fact, Defendant admitted to owning this MAC address in its discovery responses, and has submitted a declaration from one of its employees stating that he uses a computer with this MAC address.[8] See (Torres Decl., Ex. 13, ¶ 5; Yu Decl. ¶ 2.) Defendant also points out that whereas the usage report states that the computer bearing MAC address 00042e0104ea has the name "XEON64" the employee who operates the computer with this MAC address declares that its name is "YUEDANJ." (Yu Decl. ¶ 2.) Defendant's employee's declaration is not "significant probative evidence" that the information did not come from one of Defendant's computers, especially since Defendant's own expert explains that a computer's name can be changed with little difficulty. See (Kopelev Decl. ¶ 4.) The fact that the computer's name is no longer the same does not demonstrate that the "phone home" data did not originate from one of Defendant's computers.

    Defendant also argues that the usage report is unreliable because it may not have been the user of the IP addresses listed on the report. Defendant admitted in its interrogatory responses that it uses IP addresses 210.21.227.66, 210.51.195.14, 210.51.195.18, 58.60.230.125, and 210.51.195.34. See (Torres Decl., Ex. 12, 6:10-21.) According to Defendant, those IP addresses are "external," meaning that they can also be used by the public or customers of other large commercial internet service providers. Therefore, Defendant claims that the data in the usage reports could have come from a third outside party using the same IP addresses. If Plaintiff had merely generated reports showing activity from these IP addresses without also showing the MAC address of the computer "phoning home," Defendant's argument might have been successful. However, Plaintiff's usage reports show that a computer bearing Defendant's MAC address "phoned home" over these IP addresses. Defendant has not suggested or provided any evidence that some outside third party also had access to Defendant's MAC addresses or computer hardware.

    Finally, Defendant contends that the Court should deny summary judgment because it is easy for a user to change the MAC address, IP address, user name, and computer name of a machine, a practice

---

[8]/    Defendant argues that its admission is not sufficient evidence because it did not specify that it owned this MAC address during the time period of November 2006 to February 2011. However, since Defendant keeps no records of its past MAC addresses, it is unable to determine whether it did or did not own a certain MAC address in the past. (Nan Dep. 158:22-160:3.) Defendant has not provided any evidence that it did not own MAC address 00042e0104ea during December 2006 to February 2011, nor suggested any reason why it would not have owned that address during that time.

**SEND**

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-5790 PA (SHx) | Date | June 13, 2011 |
|---|---|---|---|
| Title | AWR Corp. v. ZTE, Corp., et al. | | |

known as "spoofing." Defendant implies that someone, perhaps Plaintiff itself, fabricated the information contained in Plaintiff's usage reports to falsely frame Defendant. Defendant has provided no evidence suggesting that the information in the usage reports was spoofed, and the mere speculation that it was spoofed is insufficient to overcome summary judgment. Since Plaintiff has produced sufficient evidence that Defendant breached the SLA, and Defendant has not produced significant probative evidence in its defense, Plaintiff is entitled to summary judgment.

## Conclusion

For the foregoing reasons, Plaintiff has adequately established that it is entitled to summary judgment on the issue of whether Defendant breached the contract between it and Plaintiff. Accordingly, Plaintiff's Motion for Partial Summary Judgment is granted. The evidence to which Defendant's remaining evidentiary objections are directed were not relied upon by the Court in granting Plaintiff's motion for summary judgment, and therefore, are denied as moot.

IT IS SO ORDERED.